J-S50036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUNIE ANTONIO WOFFARD | |
| Appellant | No. 2889 EDA 2014 |

Appeal from the Judgment of Sentence May 6, 2014
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0003741-2013

BEFORE:  PANELLA, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED AUGUST 18, 2015**

A jury found Junie Antonio Woffard guilty of persons not to possess firearms and carrying firearms without a license,[1] and the trial court sentenced him to an aggregate term of 45-108 months' imprisonment.  We affirm.

The following evidence was adduced during trial.  On August 5, 2013, Detectives Erik Landis and Raymond Ferraro of the Allentown Police Department were investigating the murder of Charles Bryant that evening in the 900 block of Oak Street in the City of Allentown.  N.T., 3/11/14, at 34. In the course of the investigation, Detective Landis obtained the iPhone of a third person, who consented to the extraction of the phone's contents.

---

[1] 18 Pa.C.S. §§ 6105 and 6106, respectively.

1

Commonwealth exhibits 1A, 1B. Detective Landis extracted 147 photographs and 8 videos from the iPhone. N.T., 3/11/14, at 38.

During Woffard's trial, the Commonwealth introduced data recovered from the iPhone, including a group photograph of four individuals, a video, and still photographs retrieved from the video. The group photograph was taken two hours before Bryant's death. Commonwealth exhibits 2, 3; N.T., 3/11/14, at 42-43. The photograph depicted Woffard with a TEC-9 firearm partially concealed in his waistband; Bryant and two other men were also in the photograph. *Id*. The video was taken on August 2, 2013, three days before Bryant's murder. Commonwealth exhibit 8; N.T., 3/11/14, at 46-50. The video and the still photographs from the video depicted Woffard possessing both the TEC-9 firearm and ammunition in a vehicle. *Id*.

Detective Ferraro recognized Woffard from the group photograph. The detective further observed that the photograph was taken "right where Charles Bryant was killed", and that Bryant was wearing the same clothing in the photograph as when he was murdered. N.T., 3/11/14, at 62-63, 68. From these facts, Detective Ferraro deduced that Woffard had been present during the homicide. The detective arranged to meet with Woffard as part of the homicide investigation. *Id*. at 63, 68.

On the afternoon following Bryant's death, Woffard appeared voluntarily, not as a suspect but as a witness to the homicide. Detective Ferraro presented him with several photographs, including the group

photograph described above. *Id*. at 64-69. Woffard identified himself and other individuals in the photographs and pinpointed their date and time. *Id*. at 76-77. Woffard confirmed that the group photograph was taken in the 900 block of Oak Street, the same block in which Bryant was killed, only hours before the murder. *Id*. at 80.

Woffard also admitted that he was holding a "real TEC-9" in the photographs and described various features of this weapon. *Id*. at 72-78, 82. He also admitted putting the TEC-9 firearm in the back of his friend's car prior to the homicide. *Id*. at 81; N.T., 3/12/14, at 28. He stated that he would have used this gun to protect himself had he possessed it at the time of Bryant's murder. N.T., 3/11/14, at 79; N.T., 3/12/14, at 24. Woffard confirmed that the TEC-9 firearm in the video was the same TEC-9 firearm from the photographs. N.T., 3/11/14, at 75, 78, 82; N.T., 3/12/14, at 24.

Detective Kurt Tempinski, an expert in firearms and tool mark examination, examined the photographs and video. N.T., 3/12/14, at 44. He testified that during the video, he heard the magazine being inserted and locked in place. *Id*. at 45. He also observed "various physical features of it, including what appears to be a steel receiver that is rusted, slight configurations, configurations of a charging handle ... the barrel, the fact that it has a barrel extension attached to it, the magazine ... a polymer frame, the position of the lettering on the polymer frame of the firearm." *Id*. at 45-46. The magazine for the firearm appeared to be loaded with

cartridges. *Id*. at 47. In Detective Tempinski's expert opinion, the firearm in the photographs and video was consistent with a real TEC-9 firearm and inconsistent with a replica or airsoft firearm. *Id*. at 61-62.

The parties stipulated that Woffard was legally prohibited from possessing a firearm for more than 60 days prior to August 5, 2013. Commonwealth exhibit 9; N.T., 3/12/14 at 35-36.

As stated above, the jury found Woffard guilty of two firearms offenses, and the trial court sentenced him to a term of imprisonment. Woffard filed timely post-sentence motions, which the court denied, and a timely notice of direct appeal. Both Woffard and the trial court complied with Pa.R.A.P 1925.

> Woffard raises three issues on appeal:
>
> Whether the trial court violated the *corpus delicti* rule by allowing the admission of [Woffard's] out of court statements?
>
> Whether the evidence was sufficient to convict [Woffard for] carrying a firearm without a license?
>
> Whether [Woffard's] conviction for firearms not to be carried without a license was against the weight of the evidence?

Brief for Appellant, p. 9.

Woffard first argues that the trial court violated the *corpus delicti* rule by permitting the Commonwealth to introduce his inculpatory statements that (1) photographs taken hours before Bryant's murder depicted Woffard with a firearm in his waistband and (2) he placed the firearm into another friend's car prior to Bryant's murder.

The *corpus delicti* rule "applies to the admissibility of evidence ... Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion." **Commonwealth v. Otterson**, 947 A.2d 1239, 1249 (Pa.Super.2008). The *corpus delicti* "is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone." **Id**. The *corpus delicti* rule requires the Commonwealth to show that the charged crime actually occurred before a confession or admission by an accused can be admitted as evidence. **Id**. The purpose of this rule is to guard against hasty and unguarded confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed. **Id**.

Courts apply the *corpus delicti* rule in two phases. In the first phase, the court determines whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a preponderance of the evidence. If so, the defendant's confession is admissible. **Otterson**, 947 A.2d at 1249. In the second phase, the Commonwealth must prove the *corpus delicti* to the factfinder's satisfaction beyond a reasonable doubt before the factfinder may consider the confession in assessing the defendant's guilt or innocence. **Id**.

Here, prior to admission of Woffard's inculpatory statements, the Commonwealth presented the group photograph created on August 5, 2013 at 10:03 p.m. Commonwealth exhibit 3. Woffard was in the photograph

and appeared to conceal a firearm in the waistband of his pants. *Id*. Detective Landis testified that he recognized the background of the photograph as the 900 block of Oak Street in Allentown, Lehigh County, because he is familiar with this block, and because the photograph depicts a street sign for Hazel Street, which intersects Oak Street. N.T., 3/11/14, at 41-42. Detective Landis also identified Woffard and Bryant from the photograph and pointed out that Bryant was wearing the same clothes he was wearing when he was murdered two hours later. *Id*. at 42-43. Detective Landis testified that the August 2, 2013 video depicted Woffard placing what appeared to be a TEC-9 firearm into a Steelers bag in a red Volkswagen vehicle. *Id*. at 46-50. The video also showed Woffard and two others in a vehicle while Woffard loaded the firearm with ammunition. *Id*. The Steelers bag was also in this vehicle. *Id*.

Detective Ferraro also identified Woffard and others in the group photograph and the video. N.T., 3/11/14, at 64, 73-82. He interviewed Woffard and showed him the group photograph and still photographs from the video, and Woffard said the firearm in the group photograph and still photographs was real. *Id*. at 73-82. Moreover, Detective Tempinski, an expert in firearms and tool mark identification, testified that in his expert opinion, the firearm in the photograph and video were consistent with a real TEC-9 firearm. N.T., 3/12/14, at 62.

The group photograph, video, and photograph stills obtained from the video, along with the detectives' authenticating and corroborating testimony, established the body, or the *corpus delicti*, of the crimes of persons not to possess a firearm and firearms not to be carried without a license. Thus, the trial court properly admitted Woffard's inculpatory statements into evidence. **Otterson**, 947 A.2d at 1250 (*corpus delicti* sufficiently proven, and court properly admitted defendant's statement into evidence, where Commonwealth introduced several photos showing defendant with marijuana plants and also introduced numerous calendars found during search of defendant's properties, and calendars contained handwritten notes indicating when plants were to be watered as well as projected harvesting dates and other information related to harvesting, and search of defendant's properties revealed multiple marijuana plants at these locations).

Woffard contends in his *corpus delicti* argument that because Detective Ferraro referenced Woffard's inculpatory statements to authenticate the photograph and video, their admission was improper. We disagree. The Commonwealth satisfied its burden by presenting authentication evidence that was independent of Woffard's inculpatory statements.

Pennsylvania Rule of Evidence 901 provides that "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must introduce evidence sufficient to support a finding that the item is what the proponent claims it is." This can be accomplished by the

testimony of a witness with knowledge that "an item is what it is claimed to be," a "comparison with an authenticated specimen by an expert witness," or based on the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Pa.R.E. 901(b)(1), (3), (4); *see also Nyce v. Muffley*, 119 A.2d 530, 532 (Pa.1956) (authentication testimony may be provided by the person who took the photograph or video, "or by some other witness with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time" of recording); *Commonwealth v. Impellizzeri*, 661 A.2d 422, 428 (Pa.Super.1995) ("a witness familiar with the subject matter can testify that the tape was an accurate and fair depiction of the events sought to be shown").

Here, Detectives Landis and Ferraro identified the location and individuals in the group photograph and video based on their independent knowledge. Their testimony regarding the clothing worn by Bryant in the photograph, along with Detective Landis' testimony concerning his extraction of data from the iPhone, established when and how the group photograph and video were captured. The detectives further testified that based on their experience and personal knowledge, both the item in the group photograph that Woffard partially concealed in his pants and the item in the video that Woffard placed inside the vehicle and loaded with ammunition was a firearm – specifically, a TEC-9 firearm. Finally, Detective Tempinski testified that in

his expert opinion, the item in both the group photograph and video was consistent with a real TEC-9 firearm. This combination of testimony was sufficient to authenticate the group photograph and video independent of Woffard's inculpatory statements.

In Woffard's second argument on appeal, he contends that the evidence is insufficient to support his conviction for carrying a firearm without a license, because the firearm was not concealed and was not carried in a vehicle.

Our standard of review challenges to the sufficiency of the evidence is well-settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

**Commonwealth v. Gonzalez**, 109 A.3d 711, 716 (Pa.Super.2015).

A person is guilty of carrying a firearm without a license "if he carries a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license." 18 Pa.C.S. § 6106(a)(1). The Commonwealth may prove the

"carrying" element either with evidence that the defendant carried a firearm in a vehicle or concealed a firearm on or about his person. *Id*. In this case, the Commonwealth furnished both types of evidence.

Proof of concealment of a firearm on the defendant's person depends on the particular circumstances of the case and is a question for the trier of fact. ***Commonwealth v. Scott***, 436 A.2d 607, 608 (Pa.1981). Here, the group photograph depicting Woffard with a firearm partially concealed in his waistband, along with Woffard's admission that this firearm was a TEC-9 weapon, demonstrates that Woffard carried a firearm concealed on or about his person. Woffard argues that the photograph does not prove concealment because the firearm is partially visible. Proof of partial concealment, however, is sufficient to demonstrate that the defendant carried a firearm on his person. ***See Commonwealth v. Butler***, 150 A.2d 172, 173 (Pa.Super.1959) (evidence of concealment sufficient where defendant carried gun in pocket; fact that part of gun was visible to witnesses did not undermine conviction).

The Commonwealth can prove that the defendant carried a firearm inside a vehicle through evidence of either actual or constructive possession. ***See Commonwealth v. Hopkins***, 67 A.3d 817, 821 (Pa.Super.2013) (evidence was sufficient to show that defendant constructively possessed firearm found in vehicle he was driving, as required to support convictions for carrying a firearm without a license; firearm was found within arms

length of where defendant was seated). Here, the video demonstrates actual possession by showing that Woffard placed a firearm inside a vehicle and loaded it with ammunition while in the vehicle. Moreover, Woffard admitting carrying the same TEC-9 firearm in the vehicle that he had in the group photograph. For these reasons, Woffard's challenge to the sufficiency of the evidence is devoid of merit.

In his final argument, Woffard insists that his conviction for carrying firearms without a license is against the weight of the evidence. The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Forbes*, 867 A.2d 1268, 1273–74 (Pa.Super.2005). A new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. *Commonwealth v. Bruce*, 916 A.2d 657, 665 (2007). The role of the trial judge is to determine whether, notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Id.* On appeal, "our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying

question of whether the verdict is against the weight of the evidence." **Commonwealth v. Knox**, 50 A.3d 732, 738 (Pa.Super.2012). An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. **Forbes**, 867 A.2d at 1273–74.

Woffard's weight of the evidence argument is largely a reprise of his attack on the sufficiency of the evidence. He states that the evidence, viewed in the light most favorable to the Commonwealth, is insufficient to support the element of concealment of a firearm on Woffard's person or carrying a firearm in a vehicle. This argument fails because, as we have held above, the evidence was sufficient to sustain Woffard's conviction.

Woffard also claims baldly that the guilty verdict on the charge of carrying firearms without a license was so contrary to the evidence as to shock the conscience. He fails to identify any reason why the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Having reviewed the record, we conclude that the trial court acted within its discretion by determining that the evidence did not shock its conscience.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2015